**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**CONNIE RODGERS,**

    **Plaintiff,**

**v.**                                                     **CASE NO. 8:09-CV-308-T-EAJ**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

    **Defendant.**
_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Act.[1]

The undersigned, after reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case, as well as the relevant statutory and case law, affirms the decision of the ALJ denying Plaintiff's claim.

In an action for judicial review, the reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2006). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703

---

[1]     The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 13).

F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).[2]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## **Background**

Plaintiff filed her applications for DIB and SSI on August 25, 2005, claiming an onset of disability on August 24, 2004. (T 38) Plaintiff claims disability due to fibromyalgia, back pain, and depression. (T 122) Plaintiff's application was denied initially and upon reconsideration. (T 38) Following a June 17, 2008 administrative hearing, (T 764-84) the ALJ denied benefits to Plaintiff in a decision dated August 22, 2008. (T 38-51) The Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. (T 3-6) Plaintiff filed a timely petition for judicial review of the Commissioner's denial after exhausting all administrative remedies (Dkt. 1). The Commissioner's decision is ripe for review under the Act.

At the time of the hearing, Plaintiff was 48 years old with a high school education and past work experience as an aide to mentally disabled adults and as an in-home attendant. (T 768-70, 780)

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 24, 2004, and that Plaintiff had the severe impairments of fibromyalgia, a thyroid disorder, obesity, a history of lumbar strain, coronary artery disease, and an adjustment disorder with depressed mood. (T 40-41) The ALJ then concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T 41) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with some restrictions.[3] (T 42) Although Plaintiff's limitations prevented her from performing her past work, based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could work as a merchandise marker, an arcade attendant, or a small products assembler. (T 50) Accordingly, the ALJ found that Plaintiff was not disabled under the Act. (T 50-51)

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

**Discussion**

Plaintiff argues that the ALJ erred (1) in discrediting Plaintiff's complaints of fatigue and urge incontinence ("UI"); and (2) by failing to include in the hypothetical to the VE limitations imposed as a result of Plaintiff's UI (Dkt. 23 at 7-9).

---

[3] Specifically, the ALJ found that Plaintiff can "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except with limitations for occasionally lifting, carrying, pushing and/or pulling 20 pounds; frequently lifting, carrying, pushing and/or pulling 10 pounds; standing, walking and/or sitting for six hours in an eight-hour workday, with the need to alternate positions every 30-60 minutes; occasionally climbing ramps and stairs, balancing and stooping; never crouching, kneeling, crawling or climbing ladders, ropes or scaffolds; no concentrated exposure to humidity, heat, cold, dust, fumes or gases; no exposure to hazards such as dangerous moving machinery and unprotected heights; and no detailed or complex job tasks secondary to the claimant's mental impairment and concentration problems." (T 42)

**A.** Plaintiff contends the ALJ erred in discrediting Plaintiff's complaints of UI and fatigue due to insomnia (Id. at 7-8). Specifically, Plaintiff contends that the ALJ mischaracterized her testimony and the medical records regarding her ability to sleep at night and "us[ed] old medical evidence to refute [] Plaintiff's current complaints" (Id. at 8). Plaintiff points to treatment notes from Cheshire Medical Center from February to October 2007 as supporting her complaints of fatigue (Id.).

The Eleventh Circuit applies a three-part "pain standard" when evaluating subjective complaints of pain. See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam). The claimant must produce: (1) evidence of an underlying medical condition; and either (2) objective medical evidence confirming the severity of the pain resulting from the medical condition; or (3) evidence that the condition is so severe that it can be reasonably expected to cause the alleged pain. Id.

When an ALJ declines to credit a claimant's testimony as to pain and other symptoms, the ALJ must articulate explicit and adequate reasons for doing so. Id. at 1561-62. The ALJ's credibility determination "does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (per curiam) (internal quotations and citations omitted). The reviewing court will not disturb a clearly articulated credibility finding supported by substantial evidence in the record. Foote, 67 F.3d at 1561. A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Id. (citation omitted).

The Commissioner may properly rely on a claimant's daily activities, among other evidence,

in determining whether a claimant is entitled to disability benefits. Hoffman v. Astrue, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam) (unpublished). In fact, when evaluating a claim based on subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating sources, and evidence of how the pain affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a).

The first mention of fatigue and sleeplessness in Plaintiff's records from Cheshire Medical Center is on April 2007 when Plaintiff stated she was "having difficulty sleeping on 150 mg of trazodone per night. She would like to increase it to 200 mg per night." (T 256) Plaintiff indicated to Candace Guberman, A.R.N.P. ("Ms. Guberman") that she had stopped taking a cholesterol medication that had the side effect of increasing her fatigue, in an unsuccessful attempt to reduce her fatigue and physical aches. (T 246) In June 2007, Plaintiff's cardiologist Alan Opsahl, M.D. ("Dr. Opsahl"), noted that Plaintiff "denies any fatigue at this point which has been plaguing her with fibromyalgia." (T 233-34) In August 2007, Plaintiff stated to Ruth Coffman, A.R.N.P. ("Ms. Coffman") that she took two Tylenol tablets almost every night to help her sleep and that this medication "work[ed] well." (T 223) One month later, Dr. Opsahl noted Plaintiff's complaints of "fatigue and extreme weakness" and "poor sleep" due possibly to fibromyalgia. (T 220-21) Plaintiff's treating physician Michael Kasschau, M.D. ("Dr. Kasschau"), increased Plaintiff's dosage of Trazodone (a medication used to treat sleeplessness, among other things) in October 2007 to help with insomnia because the medication had "helped her some in the past." (T 213)

At the hearing, Plaintiff described her sleeping habits as "[r]eally bad. I don't sleep well at all." (T 774) Plaintiff testified that sleep medications did not help. (T 775)

The ALJ acknowledged Plaintiff's statements concerning difficulty sleeping: "[Plaintiff] said

that she does not sleep well and must rest every 15-20 minutes and spends about six hours a day reclining or lying down." (T 43) Nevertheless, the ALJ ultimately found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms not credible. (T 47) The ALJ found that Plaintiff's impairments had existed at approximately the same level of severity prior to her stated disability onset date. (Id.) The ALJ reasoned "the fact that the impairments did not prevent the claimant from working [prior to her onset date] strongly suggests that they would not currently prevent work."[4] (Id.) Contrary to Plaintiff's argument, the ALJ discussed the records from Cheshire Medical Center and Plaintiff's daily activities in reaching this finding. (T 46-47, 49)

Substantial evidence supports the ALJ's decision. Plaintiff was able to work prior to her 2004 onset date despite complaints of fatigue and sleeplessness (T 391, 395, 398, 411-12) and there is no substantial evidence that these symptoms worsened after her alleged disability. Plaintiff complained to physicians at West Coast Medical Associates, P.A. of fatigue and insomnia as early as February 2000. (T 617) In June 2002, she reported to a health care worker at the Health Resource Alliance that she was taking Trazadone and Ambien to sleep. (T 395) These complaints persisted throughout 2002 and 2003. (T 391, 395, 398) As the ALJ observed, Plaintiff was employed during this period. (T 47) Plaintiff again complained to treating physicians at Health Resource Alliance of Pasco shortly after her stated onset date that she was sleeping poorly and waking up tired. (T 373)

During a May 2005 consultative psychological evaluation by Bruce Whiting, Ph.D. ("Dr. Whiting"), however, Plaintiff admitted to sleeping eight to ten hours per night with the help of

---

[4] The ALJ was referencing Plaintiff's fibromyalgia, obesity, thyroid disorder, lumbar spine strain, and depression but her credibility finding also discussed Plaintiff's complaints of fatigue and insomnia. (T 47)

6

medication. (T 522) During a November 2005 evaluation by Dr. Whiting, Plaintiff reported sleeping fourteen hours a night. (T 511) By early 2006, Plaintiff had renewed her complaints of sleeplessness to consultative examiner Stanley Rabinowitz, M.D. ("Dr. Rabinowitz") in mentioning her chronic fatigue and trouble sleeping when not using Trazodone. (T 485)

Plaintiff's complaints of fatigue were often linked to her fibromyalgia diagnosis; the ALJ determined Plaintiff's fibromyalgia to be a severe impairment. (See T 40, 220-21) Thus, by definition Plaintiff's fibromyalgia significantly limits her physical or mental ability to do basic work activities. See Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1336 (M.D. Fla. 2003) (citation omitted). The ALJ accounted for these limitations in restricting Plaintiff to light work. (T 42)

As for her daily activities, Plaintiff testified that she dusted, cooked, watched television, and occasionally shopped for groceries. (T 771-72) Plaintiff also testified that she drove and occasionally did dishes and visited her neighborhood clubhouse. (T 770-72) The ALJ considered this testimony and Plaintiff's statements that she made clay figurines and visited her family and friends (T 196) as further support for her decision to discredit Plaintiff's testimony regarding her subjective complaints.[5] (T 47, 49)

No treating or examining source opined that Plaintiff is disabled or suffers from limitations greater than those recognized by the ALJ in determining Plaintiff's RFC. (T 48) Plaintiff's treating neurologist William Greenberg, M.D. ("Dr. Greenberg") opined that Plaintiff could perform light duty, lifting no more than 20 pounds. (T 697) Although Dr. Greenberg treated Plaintiff prior to her

---

[5] A June 21, 2007 treatment note from the Cheshire Medical Center indicates Plaintiff's chief complaint was back pain that started "after playing in pool with grandchild and it is still present and worsening." (T 226) This activity is inconsistent with disabling fatigue and is further support for the ALJ's credibility determination.

onset date, the ALJ credited his findings (T 49), a decision Plaintiff does not dispute.[6] Also significant to the ALJ was Plaintiff's "ongoing conservative treatment that appears to have controlled her symptoms." (T 49) The ALJ observed, "[a]lthough the claimant has received various forms of treatment (both surgical and conservative) for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms." (T 47) The ALJ is entitled to consider the type of treatment used as one of the factors in evaluating Plaintiff's subjective complaints. See 20 C.F.R. § 404.1529.

Plaintiff also challenges the ALJ's evaluation of her complaints regarding UI, although she admits that the record is not "ideally developed" as to this condition (Dkt. 23 at 9). In February 2007, Plaintiff reported to Dr. Kasschau "a little bit of stress incontinence with the coughing recently." (T 260) In October 2007 Plaintiff was treated for UI with a medication she thought she had used successfully in the past. (T 213) No medical records indicate that this treatment failed to sufficiently manage Plaintiff's symptoms. Additionally, Plaintiff testified that she suffered from UI, that her UI sometimes woke her up at night, and that she wore diapers or pads to "be prepared." (T 775)

The ALJ acknowledged Plaintiff's testimony regarding the use of diapers or pads (T 43) and determined that the condition was "treated and controlled with medications." (T 46) This determination is supported by substantial evidence. Plaintiff experienced UI symptoms as early as

---

[6] Plaintiff's treating chiropractor, Stephen Bittiker, D.C. ("Mr. Bittiker"), opined that Plaintiff could perform medium-to-light lifting of no more than 20-25 pounds, which is less restrictive than Plaintiff's RFC as found by the ALJ. (T 42, 48, 680) The ALJ did not credit Mr. Bittiker's findings, however, because he is not an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513(a). (Id.)

8

2000, (T 422) although it apparently did not impair her ability to work as an in-home attendant. (T 770) Plaintiff did not produce any evidence that her UI symptoms had worsened or that they in any way diminished her functional capacity. See Peel v. Astrue, No. 5:08-CV-173/RS-EMT, 2009 WL 3028300, at *12 (N.D. Fla. Sept. 17, 2009) (ALJ did not err in failing to include limitations regarding plaintiff's UI in RFC because plaintiff controlled her condition by using pads and there was no evidence condition worsened). Accordingly, the ALJ did not err in her evaluation of Plaintiff's complaints.

**B.** Plaintiff also argues that the hypothetical question posed to the VE was incomplete because it did not include limitations resulting from Plaintiff's UI, specifically her need to take unscheduled restroom breaks (Dkt. 23 at 8-9).

For a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam). However, the question need only include limitations supported by the record. See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). An ALJ's failure to include claimant's severe impairments in a hypothetical question to a VE is reversible error where the ALJ relied on that VE's testimony to make a disability determination. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam). Where claimed impairments are not supported by substantial evidence, the ALJ need not include them in a hypothetical question to the VE. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam).

The ALJ posed a series of hypothetical questions to the VE, none of which included limitations relating to Plaintiff's UI or reference unscheduled bathroom breaks. (T 780-82)

Contrary to Plaintiff's argument, the ALJ did not err in failing to include limitations resulting

from Plaintiff's UI in the hypothetical question. As previously discussed, there is no evidence that Plaintiff's UI is not controlled. Additionally, Plaintiff's treatment records and her testimony are void of any reference to her need for unscheduled bathroom breaks resulting from Plaintiff's condition. In fact, when questioned about the disruptive effects of her UI, Plaintiff responded that she wears diapers and pads to guard against accidents. (T 775) This testimony suggests Plaintiff is able to manage her symptoms. Further, the ALJ did not include UI in the list of Plaintiff's severe impairments. (T 41) See Wright v. Comm'r of Soc. Sec., 327 F. App'x 135, 136 (11th Cir. 2009) (per curiam) (unpublished) ("the ALJ is not required to include findings in the hypothetical that the ALJ properly rejects").

As previously discussed, Plaintiff failed to show that the ALJ erred in her evaluation of Plaintiff's testimony regarding her UI symptoms. Therefore, the ALJ did not act improperly in excluding from her hypothetical to the VE limitations resulting from this condition.

## **Conclusion**

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED** that:

(1) the decision of the Commissioner is **AFFIRMED** and the case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2) the Clerk of the Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**DONE AND ORDERED** in Tampa, Florida on this 26th day of February, 2010.

_____
ELIZABETH A JENKINS
United States Magistrate Judge